[No. 35817-1-I. Division One. August 26, 1996.]

EDWARD MILLER, *Appellant*, v. ARCTIC ALASKA FISHERIES CORPORATION, ET AL., *Respondents*.

*John W. Merriam* and *Geisness Merriam,* for appellant.
*Dennis M. Moran* and *LeGros, Buchanan & Paul,* for respondents.

ELLINGTON, J., — Appellant Edward Miller sued his former employers, Arctic Alaska Fisheries Corp. and Westward Wind, Inc.,[1] for injury-related damages. Among other issues on appeal, Miller claims that the court erred in excluding two letters that he offered as ER 904 documents. We find the exclusion error because Arctic's objection was untimely, and reverse because exclusion of the documents prevented Miller from fully presenting his negligence case.

## I. Facts

The *Westward Wind* is a crab catcher and processor which fishes Alaska waters. On January 2, 1993, Miller began working on the *Westward Wind* as a cook and a "factory worker/deckhand." Miller left the vessel on January 22, 1993, complaining of knee, back, and buttock injuries. More specifically, Miller was allegedly injured when a door closed on his knee, when hoist operators twice struck his back with a crab cage, and when boiling water splashed on his buttocks. Miller subsequently brought suit, alleging, inter alia, that Arctic was negligent.

On September 15, 1994, Miller notified Arctic that he intended to use two letters under ER 904. One of these letters was from Dr. Michael Mycoskie, Miller's orthopedic surgeon in Texas, where Miller lives. Mycoskie's letter stated that Miller had a previous knee injury that was "aggravated" on January 26, 1993. The other letter was from another of Miller's treating physicians in Texas, Dr. Michael Williams. Williams' letter stated that Miller's burns healed without complications, but that Miller continued to have a significant amount of thoracic pain from the back injury.

---

[1]Arctic and Westward will be collectively referred to as Arctic.

Arctic did not object to these documents until October 4, then claiming they were "not within the list of documents identified in ER 904." (On appeal, Arctic concedes that this objection was incorrect, and that the documents "fall squarely within the description of documents articulated in ER 904.") Arctic again objected on October 12, this time claiming the documents were hearsay. The trial court excluded the letters as hearsay on October 18. Opening statements began that day. The jury returned a verdict for Miller on the negligence claim.

## II. ER 904

Miller contends that admission of the letters was mandatory because Arctic failed to object within the 14-day deadline prescribed by the rule. *See* ER 904(b).[2] Arctic argues the letters were properly refused because the

---

[2]In full, the rule provides:

### RULE 904. ADMISSIBILITY OF DOCUMENTS

(a) **Certain Documents Admissible.** The following documents, if relevant, may be admitted in civil cases in accordance with sections (b) and (c) of this rule:

(1) A bill, report, chart, or record of a hospital, doctor, dentist, registered nurse, licensed practical nurse, physical therapist, psychologist or other health care provider, on a letterhead or billhead;

(2) A bill for drugs, medical appliances or other related expenses on a letterhead or billhead;

(3) A bill for, or an estimate of, property damage on a letterhead or billhead. In the case of an estimate, the party intending to offer the estimate shall forward a copy to the adverse party with a statement indicating whether or not the property was repaired, and if it was, whether the estimated repairs were made in full or in part and attach a copy of the receipted bill showing the items of repair and amounts paid;

(4) A police, weather, or traffic signal report, or standard United States government table;

(5) A photograph, x-ray, drawing, map, blueprint or similar documentary evidence, to the extent it is admissible under the other rules of evidence, but without the need for formal proof of authentication or identification;

(6) A document not specifically covered by any of the foregoing provisions but relating to a material fact and having equivalent circumstantial guaranties

deadline applies only to authenticity objections, and Arctic's hearsay objection was therefore timely. We hold that the rule is not limited to authenticity objections, and that to prevent the introduction of hearsay, an opposing party must ordinarily object within the rule's time frame. Here, Arctic's untimely objection was not excusable. We therefore hold that admission was mandatory, and reverse.

 Court rules are interpreted using normal principles of statutory construction. *State v. Carson*, 128 Wn.2d 805, 812, 912 P.2d 1016 (1996). When interpreting a statute, courts give predominate weight to the statute's language and resort to legislative history only to resolve ambiguities. *State v. McCraw*, 127 Wn.2d 281, 288-89, 898 P.2d 838 (1995). Courts do not consider the wisdom of the enactment.[3] *See State v. CSG Job Center*, 117 Wn.2d 493, 505-06, 816 P.2d 725 (1991).

 We first note the titles of the rule and its first section ("Admissibility of Documents," "Certain Documents Admissible"), which make clear the rule relates to admission and not just to authenticity. Further, the rule's plain

of trustworthiness, the admission of which would serve the interests of justice.

(b) **Notice.** Any party intending to offer a document under this rule must serve on all parties a notice, accompanied by a copy of the document and the name, address and telephone number of its author or maker, at least 30 days prior to trial. The notice shall be filed with the court. Copies of documents that accompany the notice shall not be filed with the court.

(c) **Opposing Party May Require Proof of Identification and Authentication.** Any other party may, within 14 days of notice, serve a written objection to any document proposed to be offered under this rule. In the event of objection, the document shall be admitted into evidence only in accordance with the other rules of evidence. If the court finds that such objection was made without a reasonable basis, then the court may award expenses in accordance with CR 37(c).

(d) **No Effect Regarding Weight of Evidence Submitted.** This rule does not restrict argument or proof relating to the weight to be accorded the evidence submitted, nor does it restrict the trier of fact's authority to determine the weight of the evidence after hearing all of the evidence and the arguments of opposing parties.

ER 904.

[3] We therefore offer no comment on potential problems with the rule.

language anticipates the admission of hearsay documents; in fact, the majority of documents enumerated in the rule ordinarily constitute or include objectionable hearsay (for example, police reports, doctor reports, property damage estimates). In addition, the rule's catch-all provision uses a hearsay concept ("circumstantial guaranties of trustworthiness") as a basis to admit documents not elsewhere identified in the rule. ER 904(6); *see, e.g., State v. Florczak*, 76 Wn. App. 55, 67, 882 P.2d 199 (1994), *review denied*, 126 Wn.2d 1010, 892 P.2d 1089 (1995).

The comments by the Washington State Bar Association, which drafted and proposed the rule, state that the rule was limited to civil proceedings to avoid offending a defendant's confrontation rights in criminal cases. 5B KARL TEGLAND, WASHINGTON PRACTICE (3d ed. 1989 and Supp. 1996 at 135). Obviously, the drafters contemplated admission of hearsay. Indeed, their stated intent was to "expedite the authentication *and* admission into evidence of certain documents." TEGLAND, *supra* (quoting Washington State Bar Association comment) (emphasis added). The conjunctive "and" is instructive. Authentication is foundational only. Regardless of authenticity, many documents expressly included in the rule would remain subject to fatal objections such as hearsay, and unless the rule contemplates waiver of substantive as well as foundational objections, the rule will not accomplish its purpose of expediting admission of such documents. Indeed, when the drafters did intend the rule to be limited to authentication they explicitly said so, as they did when addressing the admission of documentary evidence. *See* ER 904(a)(5). Further, the rule provides that documents objected to "shall be admitted only in accordance with the other rules of evidence" — not just in accordance with the rules relating to authentication and identification, but "the other" rules of evidence.

The rule is patterned on the rule for evidence in arbitration proceedings. MAR 5.3(d) sets forth documents "presumed admissible at an arbitration hearing" if proper no-

tice is given. The lists are substantially the same. While the drafters of ER 904 did not use the "presumed admissible" language, they also did not use distinguishing language, and the similarities between the rules and their purposes are unmistakable. Indeed, the chief commentator on the rule states, "Rule 904 was adopted in 1992 at the suggestion of the Washington State Bar Association. The rule makes a long list of documents and other forms of demonstrative evidence presumptively admissible in civil cases." TEGLAND, *supra,* § 468.

■ We recognize that the subheading of ER 904(c), "Opposing Party May Require Proof of Identification and Authentication," gives some indication that only authentication objections would be waived; this argument also finds support in the drafters' comment that "[t]he intent of the rule is to reduce the time and expense with presenting witnesses that are typically necessary to provide a foundation for the authentication of documents." TEGLAND, *supra.* While we may wish for clearer drafting, either of the rule or of its commentary, or both, we must reconcile these expressions of intent with the rule as a whole. *See State v. Akin,* 77 Wn. App. 575, 580, 892 P.2d 774 (1995). We do not believe that the language of the heading or comment controls interpretation of the scope of the entire rule, because it is in fundamental conflict with other comments, with the remaining language of the rule, and with the rule's overall structure.

■ We conclude that the objection provision relates not only to authentication, but to all evidentiary objections. The question then becomes whether substantive evidentiary objections are waived if not made within the time provided. We hold that generally they are, because holding otherwise would prevent meaningful expedition of admission of the many hearsay-type documents targeted by the rule, and would prejudice parties giving proper notice in reliance on the rule.

■ Here, Arctic's objection was untimely. The rule cre-

ates an expectation of admission in the absence of a timely objection; as Miller points out here, had a timely objection been made, he could have taken steps to preserve the testimony. Receiving no objection, he relied on the expectation created by the rule, to his prejudice. As is implied in the phrase, "may be admitted," the court has some discretion to excuse untimely objections. *See* ER 904(a); *see also Scannell v. Seattle*, 97 Wn.2d 701, 704-05, 648 P.2d 435 (1982). But this discretion must be limited to ensure that the offering party is not prejudiced. Consequently, an untimely objection should be held to constitute a waiver except in circumstances where the objection could not have been anticipated, or where admission would create an injustice. For example, objection might be excused where not reasonably apparent (as where a substantive evidentiary flaw affecting "circumstantial guaranties of trustworthiness" does not manifest itself within the objection time frame), or where an offering party submits volumes of documents so that the opposing party is overwhelmed. Arctic did not provide any compelling reason for its untimely objections here.

Arctic claims that once it made known its hearsay objection, Miller should have taken steps to obtain admissible non-hearsay evidence, perhaps by means of telephone depositions. But this argument misplaces the burden. Having failed to offer timely objection, Arctic acquired the burden of challenging the hearsay evidence.

The trial court erred in excluding the documents, which constituted a material part of plaintiff's medical evidence. We therefore remand for retrial on the damages aspect of the negligence claim.

The remainder of this opinion has no precedential value and will be filed according to the rules of the court. *See* RCW 2.06.040; RAP 10.4(h). The facts are known to the parties and will only be mentioned as is necessary for an understanding of this opinion.

GROSSE and AGID, JJ., concur.

Review granted at 131 Wn.2d 1005 (1997).