944 P.2d 1005 (1997)
133 Wash.2d 250
Edward MILLER, Respondent,
v.
ARCTIC ALASKA FISHERIES CORP. and Westward Wind, Inc., Petitioners.
No. 64627-9.
Supreme Court of Washington, En Banc.
Argued June 17, 1997.
Decided September 25, 1997.
Reconsideration Denied November 20, 1997.
As Amended on Denial of Reconsideration November 21, 1997.
*1006 Le Gros, Buchanan & Paul, Dennis M. Moran, Seattle, for appellant.
John W. Merriam, Seattle, for respondents.
TALMADGE, Justice.
A seaman[1] brought various claims against his employer for alleged injuries sustained while working on board a crab vessel. At issue on appeal are the interpretation and *1007 application of ER 904 to various medical opinion letters, the resolution of the seaman's unseaworthiness claim as a matter of law, resolution of the seaman's contract claims under 46 U.S.C. § 10601, and whether substantial evidence supports the jury's verdict resolving the seaman's maintenance and cure claims.
We hold ER 904, a counterpart to MAR 5.3, is designed to expedite the admission of certain specified documents into evidence, subject to the ability of the opposing party to object to the admission of such documents. In the absence of a timely objection under ER 904(c), the documents are admitted. Here, the trial court erred in excluding certain letters timely submitted under ER 904 to which untimely objections were made. We find this error harmless, however, since the letters contained information already before the jury. Likewise, the trial court erred in dismissing a portion of the seaman's claim of vessel unseaworthiness where there was evidence of repeated unsafe activities by the vessel's crew. This error also was harmless because Miller received a jury award on his alternative Jones Act (46 U.S.C.App. § 688) negligence claim. The trial court properly dismissed the seaman's contentions regarding the terms of his contract of employment under 46 U.S.C. § 10601. Substantial evidence supported the jury verdict on maintenance and cure. We reverse the Court of Appeals in part and affirm in part, reinstating the trial court's judgment.

ISSUES
1. Does ER 904 require objections regarding the admission of documentary evidence be made within the rule's time limit, or the documents are admitted into evidence?
2. Did the trial court err in dismissing an unseaworthiness claim where there was evidence of repeated misuse of ship's equipment by the crew which allegedly resulted in a seaman's injuries?
3. Did the trial court err in its treatment of a seaman's contract of employment under 46 U.S.C. § 10601?
4. Does substantial evidence support the jury's verdict indicating Miller attained maximum cure by May 15, 1993?

FACTS
The WESTWARD WIND, owned by Arctic Alaska Fisheries Corp. (Arctic), is a crab catcher and processor fishing Alaska waters. On January 2, 1993, Miller began working on the WESTWARD WIND as a cook/factory worker/deckhand pursuant to a 30-day contract. Miller left the vessel at St. Paul Island in the Bering Sea on January 22, 1993, complaining of knee, back, and buttock injuries. More specifically, Miller was allegedly injured in separate incidents during his short time on board the WESTWARD WIND when a door closed on his knee, hoist operators twice struck his back with a 500-pound crab cage, and boiling water splashed on his buttocks from an open crab cooker.
Miller filed the present action in the King County Superior Court, alleging the defendants were negligent under the Jones Act (46 U.S.C.App. § 688), the WESTWARD WIND was unseaworthy, he was not compensated as agreed, and he was entitled to additional maintenance and cure, punitive damages, and attorney fees. The defendants counterclaimed against Miller, alleging fraud because he certified his availability for work and received unemployment compensation while receiving maintenance and cure. Contentious discovery by both parties ensued.
On September 15, 1994, Miller notified Arctic under ER 904 that he intended to use a list of documents including two letters from medical doctors concerning his medical condition. One of these letters was from Miller's orthopedic surgeon in Texas, where Miller lives, which stated Miller had a previous knee injury aggravated by his shipboard experiences. Plaintiff's Ex. 14. The other letter was from another of Miller's treating physicians in Texas, stating Miller's burns healed without complications, but Miller continued to have a significant amount of thoracic pain from the back injury. Plaintiff's Ex. 15. Arctic first objected to these and other documents on October 4, 1994. On October 12 and October 14, Arctic objected to the documents as hearsay or as expressions of opinion. *1008 The trial court excluded the letters on October 18 as expressions of opinion, or hearsay, which denied Arctic the ability to cross-examine their preparer.
The trial commenced on October 18, 1994. At the close of Miller's case, on motion by Arctic, the trial court dismissed Miller's contract claims, claim of unseaworthiness and claims for punitive damages and attorney fees regarding alleged nonpayment of maintenance and cure. The jury ultimately returned a verdict for Miller on the negligence claim for $1,374 in damages, but also found Miller 50 percent at fault for his injuries; the net judgment was for $687. The jury also found for Miller on the counterclaim for fraud and found he had reached maximum cure by May 15, 1993. On appeal by Miller, the Court of Appeals reversed the trial court decisions on the admissibility of the doctors' letters under ER 904 and on unseaworthiness, and remanded the case to the superior court for a new trial. Miller v. Arctic Alaska Fisheries Corp., 83 Wash.App. 255, 259, 262, 921 P.2d 585 (1996) (see also Miller v. Arctic Alaska Fisheries Corp., No. 64627-9, 131 Wash.2d 1005, 932 P.2d 644 (Wash. Feb. 6, 1997), unpublished op. at 8-9). We granted review.

ANALYSIS
A. ER 904
ER 904 has no federal counterpart, has not been analyzed in law review articles, and has been discussed in only one reported appellate decision in dictum.[2] In Patterson v. Horton, 84 Wash.App. 531, 929 P.2d 1125 (1997), the Court of Appeals held a plaintiff's medical bills and records were admissible as business records under RCW 5.45.020, with the aid of testimony from the records custodian, to prove costs of future treatment. The plaintiff attempted to have these documents admitted under ER 904, but served the documents on opposing counsel 23 days before trial in violation of the rule. The Court of Appeals noted: "[H]ad Patterson given timely notice pursuant to ER 904, she would have eliminated the need to call a witness to authenticate *1009 the records. (citing Miller v. Arctic Alaska Fisheries Corp., 83 Wash.App. 255, 261, 921 P.2d 585 (1996))." Id. at 542 n. 7, 929 P.2d 1125.
In this case, the Court of Appeals took an expansive view of ER 904, considering the rule's "overall structure" along with its commentary in order to achieve the apparent intent of expediting the admission of "the many hearsay-type documents targeted by the rule." See Miller, 83 Wash.App. at 261, 921 P.2d 585. Under this approach, Arctic's failure to make its hearsay objection to the letters submitted by Miller within ER 904 time limits resulted in a waiver of any objection and the admission of the letters.
Arctic contends ER 904 is confined to authentication of documents and does not provide for their presumptive admissibility. Arctic argues ER 904(a), which provides that enumerated documents "may be admitted in civil cases in accordance with (b) and (c) of this rule," preserves the trial court's broad discretion to admit or refuse evidence at any time, and its decision should not be disturbed save for an abuse of discretion. See Maehren v. City of Seattle, 92 Wash.2d 480, 488, 599 P.2d 1255 (1979), cert. denied, 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981).
The language of ER 904, unfortunately, uses authentication and admission indiscriminately and the rule is ambiguous. We construe the terms of an ambiguous court rule as we construe an ambiguous statute. See State v. Greenwood, 120 Wash.2d 585, 592, 845 P.2d 971 (1993) (when interpreting court rules, Supreme Court employs principles of statutory construction); State v. Wachter, 71 Wash.App. 80, 856 P.2d 732 (1993) (court rules are to be interpreted in the same manner as statutes), review denied, 123 Wash.2d 1014, 871 P.2d 599 (1994)
The principal guidance for interpretation of ER 904 is found in the comments of the Washington State Bar Association's Court Rules and Procedures Committee, the drafters of ER 904. 5B Karl Tegland, Washington Practice (3rd ed.1989, Supp.1997) at 139. The Court of Appeals relied on the drafters' comments as well. Miller, 83 Wash.App. at 260-61, 921 P.2d 585. The comments clearly indicate ER 904 was intended to parallel MAR 5.3, a mandatory arbitration rule providing for presumptive admissibility of enumerated documents. The comments reference ER 904's intended purpose to address both authentication and admission.
Like the arbitration rule upon which it is based, ER 904 is designed to expedite the admission of documentary evidence. Thus, for the documents enumerated in ER 904(a), a party seeking their admission into evidence must serve them upon opposing counsel at least 30 days prior to trial. ER 904(b). Opposing counsel may request proof of authentication and identification of the documents, or pose any appropriate evidentiary objection to the documents, within 14 days of receiving notice.[3] ER 904(c). ER 904(a) provides that enumerated documents "if relevant, may be admitted in civil cases in accordance with (b) and (c) of this rule." This language does not require the trial court to admit enumerated documents. Instead, the trial court may exercise its traditional discretion to address a party's evidentiary objection and admit or exclude the documentary evidence, provided that the objection to the admission of the evidence is made in accordance with the terms and time limits of ER 904.
We also note that amendments to ER 904 have recently been published for comment. Proposed Amendment to ER 904, 130 Wash.2d No. 8 at Proposed 97 (Jan. 14, 1997). These clarifying amendments indicate ER 904 relates to admissibility, not just authentication, of documents, although the scope of the rule is narrowed:
As drafted, however, the rule allowed the enumerated documents to be admitted upon proper notice unless objections were made as provided in the rule. Critics of the rule suggested that it might be a "trap for the unwary," in that an opponent's failure to object to hearsay contained in a document that the opponent agrees is "authentic" might result in a waiver of that objection at trial. See, e.g., TEGLAND, LITIGATION

*1010 TODAY 8 (January, 1994), also suggesting that clarifying amendments might be necessary.
The committee agreed that the rule needed clarification. It was determined that the rule should be one of admissibility. The title of the rule, "Admissibility of Documents," is therefore retained. The amendment to section (a) then makes clear that in a civil case, the enumerated documents proposed as exhibits in accordance with section (b) "shall be deemed admissible" unless objection is made under section (c). Because a failure to object will result in the likely admission of a listed document, however, the committee believed that the list should be restricted somewhat from its current state. Thus, the word "report" is deleted from subsection (a)(1) and the word "police" from (a)(4). The committee was concerned that doctors' or police reports, for example, may contain hearsay, speculation or other statements that should not be "routinely admitted," and that a failure to object under the rule should not result in the automatic admission of such potentially damaging evidence.
130 Wash.2d No. 8 at Proposed-100. These clarifications comport with our interpretation of ER 904.
Arctic did not make a timely objection under ER 904 to the admissibility of the two medical letters as hearsay. The trial court later excluded the letters as hearsay, despite the untimely objection. While in other contexts, such exclusion may be appropriate because the letters contained expressions of opinions by Miller's doctors,[4] the issue here is whether under ER 904 the letters should have been excluded given Arctic's failure to timely object. ER 904(c) provides "[i]n the event of objection, the document shall be admitted into evidence only in accordance with the other rules of evidence." Under ER 904, we hold the documentary evidence will be admitted absent an objection. Furthermore, as the Court of Appeals points out, where documents are timely offered under ER 904, the rule creates an "expectation of admission" in the absence of a timely objection. Miller, 83 Wash.App. at 262, 921 P.2d 585. This approach is in accord with the "presumption of admissibility" under the rule. See Tegland, supra at 139 (the rule makes a long list of documents and other forms of demonstrative evidence presumptively admissible in civil cases). Because Arctic could offer no compelling reason for its failure to timely object, the trial court erred in failing to admit the letters.[5]
Having determined the trial court erred in failing to admit the two doctors' letters, our analysis next proceeds to the question of whether the exclusion of the letters was prejudicial. See Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 169-70, 876 P.2d 435 (1994) (even if grounds for exclusion are untenable, exclusion of evidence which is cumulative or has speculative probative value is not reversible error); see also Dennis J. Sweeney, An Analysis Of Harmless Error In Washington: A Principled Process, 31 GONZ. L. REV. 277 (1995-96), at 319 (citing cases and noting Washington has a long history of ruling error harmless if the evidence admitted or excluded was merely cumulative). In oral argument before this Court, Miller's counsel conceded that exclusion of one of the letters, that of Dr. Mycoskie, was harmless error.
Our independent analysis of the two letters indicates that the contents of the two letters confirm Miller's trial testimony and are therefore merely cumulative. Using layman's *1011 terms, his statements on the stand either mirror or necessarily imply the doctors' comments. Dr. Williams' letter (Plaintiff's Ex. 15) notes that Miller should consider less strenuous work due to his inability to lift heavy objects repeatedly and his 10 to 15 percent disability rating. Millers says as much when he stated at trial that his body was "too old" and "too beat up" to go back to crab processing. Report of Proceedings at 203. Likewise, Dr. Mycoskie's letter (Plaintiff's Ex. 14), noting an "aggravating injury" to Miller's previously injured knee according to a January 26, 1993 examination, provides information already covered in Miller's testimony. See Report of Proceedings at 124-25, 137-39, 176-77 (While working for a moving company, Miller received a knee injury which necessitated arthroscopic surgery and continuing medication for pain. Miller also stated at trial that the knee is now fine.)
The only point not covered in Miller's testimony is Dr. Williams' medical diagnosis of his particular back problem (i.e., "some apparent disc space narrowing"). But Dr. Williams' conclusion that this condition "may give him some problems from time to time" was made known to the jury through Miller's assertions at trial of continuing back pain and that he could live with the back problems he then had. Report of Proceedings at 129.
As we noted in Havens, "[there is] no reversible error where other testimony was `in substance, the same as' the excluded evidence[.]" Havens, 124 Wash.2d at 170, 876 P.2d 435. Here, the excluded letters did no more than reiterate, in more artful terms, evidence which Miller presented to the jury through his testimony. Thus, the value of the letters to Miller is speculative at best and their admission would be extremely unlikely to affect the outcome of the trial. Even though their exclusion by the trial court was improper, we hold such error to be harmless. Havens, 124 Wash.2d at 170-71, 876 P.2d 435.
B. Unseaworthiness
The trial court dismissed Miller's unseaworthiness claim at the close of Miller's case, ruling Miller had not produced sufficient evidence to let the jury decide whether the vessel was unseaworthy. The Court of Appeals reversed the trial court's dismissal of Miller's claim incompetent crew members rendered the vessel unseaworthy, at least with respect to injuries to his back, noting Miller alleged inexperienced crew members operating a hydraulic lift twice struck him with a 500-pound crab cage, injuring his back. Miller, unpublished op. at 9.
Miller testified on each occasion a different operator of the machinery lost control of the hoist because of his unfamiliarity with the machinery, and this went on repeatedly. This assertion is supported by the videotaped testimony of Brian Erchinger, one of the crew, who Miller asserts hit him with a crab cage while operating the hydraulic hoist (occurrences Erchinger denies, Report of Proceedings at 252-54). Erchinger admits that, although he had experience in similar work, this trip was his first time on a crab processor, and he and other processors were "green." The foreman wanted to replace him with an experienced processor, and he, in fact, left the ship at the end of that trip. Report of Proceedings at 246-49, 259, 266. Thus, evidence of inexperienced hoist operators was before the jury.
Arctic challenges the Court of Appeals' reinstatement of Miller's unseaworthiness claim, asserting the trial court properly kept this issue from the jury because the negligence of Miller's coworkers does not give rise to an unseaworthy condition as a matter of law, citing cases relying on Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499-500, 91 S.Ct. 514, 517-18, 27 L.Ed.2d 562, rehearing denied, 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971), for the proposition an isolated personal negligent act occurring on a vessel does not render the vessel unseaworthy; and negligent acts of crew members must be continuous or pervasive and repeated frequently in order to create the condition of unseaworthiness. See Rogers v. Eagle Offshore Drilling Servs., Inc., 764 F.2d 300, 303, rehearing denied, 770 F.2d 549 (5th Cir.1985); Daughdrill v. Ocean Drilling and Exploration Co., 709 F.Supp. 710, 712 (E.D.La.1989). The distinction between a negligent individual act and the condition of unseaworthiness is explained in Hogge v. SS *1012 Yorkmar, 434 F.Supp. 715 (D.C.Md.1977), a case involving a ship's collision with a railroad bridge precipitated by the pilot's lack of knowledge regarding the waterway and its procedures. In finding the ship unseaworthy, the Hogge court opined:
A condition, transitory or otherwise, of a crew member (lack of skill, knowledge, etc.) rendering him not fit for his ordinary duties or not up to the ordinary standards of his profession renders the vessel unseaworthy; an isolated act of negligence committed by an otherwise competent crew member does not.
Hogge, 434 F.Supp. at 736.[6]
To plead a prima facie case for unseaworthiness, Miller must show (1) he was injured while in the ship's service, (2) by a piece of ship's equipment, (3) which was not reasonably fit for its intended use. See Matter of Hechinger, 890 F.2d 202, 207 (9th Cir.1989), cert. denied, 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990); Gebhard v. S.S. Hawaiian Legislator, 425 F.2d 1303, 1310 (9th Cir.1970).
Misuse of safe equipment by an incompetent crew can render a vessel unseaworthy. Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 727, 87 S.Ct. 1410, 1412, 18 L.Ed.2d 482 (1967) ("[E]ven though the equipment furnished for [a] particular task is itself safe and sufficient, its misuse by the crew renders the vessel unseaworthy."); see also Allen v. Seacoast Products, Inc., 623 F.2d 355, 360-61 (5th Cir.1980) (it is established beyond question that misuse of even nondefective, otherwise seaworthy equipment may nevertheless create an unseaworthy condition), overruled on other grounds in, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir.1997).[7]
The dispositive issue here is whether the hoist operators' occurrences of misuse of the machinery were isolated acts of negligence of competent seamen or a condition of unseaworthiness brought on by improperly trained personnel. As the Waldron Court noted: "[u]nseaworthiness extends not only to the vessel but to the crew." Waldron, 386 U.S. at 727, 87 S.Ct. at 1412. "[U]nseaworthiness results when a member of the crew is `not equal in disposition to the ordinary men of that calling.' That is so, ... because the shipowner has a duty to provide a crew `competent to meet the contingencies of the voyage.'" Id. at n. 4 (citations omitted).
In ruling on a motion for judgment as a matter of law, the trial court must view the evidence in the light most favorable to the nonmoving party. If there is any justifiable evidence from which reasonable minds might find for the nonmoving party, the issue is for the jury. Snow, 38 Wash. App. at 226, 686 P.2d 1090; see also Levy v. North Am. Co. for Life and Health Ins., 90 Wash.2d 846, 851, 586 P.2d 845 (1978); Cowsert v. Crowley Maritime Corp., 101 Wash.2d 402, 405, 680 P.2d 46 (1984). Viewing the *1013 evidence in the light most favorable to Miller, there were issues of fact surrounding the circumstances of his injuries. There was a question of fact regarding the inexperience of machinery operators aboard the WESTWARD WIND rendering them unfit for the ordinary duties of their profession, and whether this inexperience caused Miller's injury. The Court of Appeals was correct in holding the trial court should have allowed the issue of the unseaworthiness of the vessel to go to the jury.
Although we agree with the Court of Appeals the trial court erred in dismissing Miller's unseaworthiness claim as a matter of law, such error is not prejudicial. While distinct theories of recovery, unseaworthiness and a Jones Act negligence case have essentially identical measures of damages. See Grant Gilmore and Charles L. Black, Law of Admiralty § 6-39 (2d ed.1975) at 389-90; 1 T. Schoenbaum, Admiralty and Maritime Law § 6-25 at 339 (2d ed.1994); Kopczynski v. The Jacqueline, 742 F.2d 555, 560 (9th Cir.1984), cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985) (citing 1B Benedict on Admiralty, § 21 at 3-3 (1983), noting a seaman is not entitled to independent recoveries for his negligence and unseaworthiness claims); Dunkelberger v. American Mail Line, Ltd., 230 Or. 1, 5, 367 P.2d 398 (1961) (citing McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 224-25, 78 S.Ct. 1201, 1203-04, 2 L.Ed.2d 1272 (1958) (if the seaman is to sue for both unseaworthiness and Jones Act negligence, he must do so in a single proceeding as these claims were but alternative grounds of recovery for a single cause of action)). The jury here returned a general verdict that the defendants were liable. As the measure of damages for Jones Act claims and unseaworthiness claims is essentially identical, any error with respect to the dismissal of the unseaworthiness claim is not prejudicial in this case where the jury found Arctic liable to Miller in any event. See Mavroudis v. Pittsburgh-Corning Corp., 86 Wash.App. 22, 34-36, 935 P.2d 684 (1997) (Court of Appeals found instruction on negligent failure to warn in error, but as jury rendered general verdict on strict liability product warning claim and negligent failure to warn, error was not prejudicial where reversal of negligent failure to warn claim would not affect the verdict); see also Taylor v. Burlington N.R.R. Co., 787 F.2d 1309, 1314-15 (9th Cir.1986) (when a jury awards a plaintiff his or her full measure of recovery based on one theory of liability, it is harmless error if the court fails to instruct the jury on an alternative theory of liability); Rogers v. Gracey-Hellums Corp., 442 F.2d 1196 (5th Cir.1971) (where seaman recovers on his Jones Act negligence claim, failure of trial court to find vessel unseaworthy was, if error, harmless because amount of recovery would be unaffected).
C. Contract Under 46 U.S.C. § 10601
Miller contends the trial court erred in dismissing his claims relating to his contract of employment at the conclusion of his case. 46 U.S.C. § 10601 requires the contract of employment for a seaman specify in writing the compensation terms and length of employment. See Bjornsson v. U.S. Dominator, Inc., 863 P.2d 235, 237 (Alaska 1993). At trial, Miller testified he signed the contract understanding its 30-day term, and further admitted he received his full wages and more than his contracted share of the catch through his contracted period of employment. The case law cited by Miller without analysis, Vitco v. Joncich, 130 F.Supp. 945, 950-51 (S.D.Cal.1955), affirmed, 234 F.2d 161 (9th Cir.1956), does not support his arguments. In that case, a seaman fell ill and was entitled to his full wage for his "term of employment." The pertinent term of employment therein was "for the tuna season."
We do not believe where federal law requires the maritime employer and seaman to agree in writing on the length and terms of employment we will permit variation of the terms of the agreement by parol evidence. See U.S. Life Credit Life Ins. Co. v. Williams, 129 Wash.2d 565, 569-71, 919 P.2d 594 (1996) (under the "context rule" adopted in Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222 (1990), while extrinsic evidence may be admissible to assist the court in ascertaining the intent of the parties and interpreting the contract, such evidence cannot be considered for the purpose of varying the terms of *1014 a written contract). See also Lynott v. National Union Fire Ins. Co. of Pittsburgh, Pa., 123 Wash.2d 678, 684, 871 P.2d 146 (1994) (unilateral or subjective purposes and intentions about the meanings of what is written do not constitute evidence of the parties' intentions); Public Util. Dist. No. 1 of Klickitat County v. International Ins. Co., 124 Wash.2d 789, 881 P.2d 1020 (1994) (where language of an insurance contract is clear and unambiguous, court must enforce it as written and may not modify it or create ambiguity where none exists). Cf. Bjornsson v. U.S. Dominator, Inc., 863 P.2d 235, 240 (Alaska 1993) (the very point of 46 U.S.C. § 10601 is to avoid later misunderstandings and differing interpretations among the parties regarding the terms of employment; custom may be considered to interpret the writing only where the writing is ambiguous).
Here, the length and terms of employment were clearly stated in the contract required under 46 U.S.C. § 10601. Dismissal by the trial court of Miller's contract claims was proper.
D. Maintenance and Cure
Maintenance and cure is the maritime analog to land-based industrial insurance paying an injured seaman's medical expenses (cure) and compensation in lieu of wages (maintenance) for injuries incurred in service of a ship. See Stevens v. McGinnis, Inc., 82 F.3d 1353, 1356, cert. denied, ___ U.S. ___, 117 S.Ct. 433, 136 L.Ed.2d 331 (1996); Barr v. Day, 69 Wash.App. 833, 837 n. 3, 854 P.2d 642 (1993), appealed and decided on other issues, 124 Wash.2d 318, 879 P.2d 912 (1994). Maintenance and cure is usually paid until "maximum cure" is achieved, that is, the seaman's condition becomes fixed and stable. See Stevens, 82 F.3d at 1356; Pelotto v. L & N Towing Co., 604 F.2d 396, 400 (5th Cir.1979); Farrell v. United States, 336 U.S. 511, 518, 69 S.Ct. 707, 710, 93 L.Ed. 850 (1949). Failure to pay maintenance and cure, if "willful and persistent" may result in an award of attorney fees to the injured seaman. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).
Miller asserts the jury erroneously concluded he achieved maximum cure by May 15, 1993. We disagree. Miller himself testified the at the end of May 1993 he met with his doctor, who told him he had become "as good as [he] was going to get" by that time. Report of Proceedings at 143. Contrary to Miller's assertion the excluded letters would prove his case, nothing in the excluded medical letters previously discussed altered this conclusion. Substantial evidence, therefore, supported the jury's verdict regarding the date maximum cure was reached.[8]

CONCLUSION
The Court of Appeals is correct in holding the trial court erred in excluding letters under ER 904, and the trial court erred in dismissing Miller's unseaworthiness claim. However, because we find these errors harmless, we reverse the Court of Appeals determination to remand the case for retrial on these two issues. We affirm the Court of Appeals disposition of the remaining issues. The trial court's judgment is reinstated.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER and SANDERS, JJ., concur.
NOTES
[1] We use the traditional reference to a "seaman" throughout this opinion.
[2] In full, the rule provides:

RULE 904. ADMISSIBILITY OF DOCUMENTS
(a) Certain Documents Admissible. The following documents, if relevant, may be admitted in civil cases in accordance with sections (b) and (c) of this rule:
(1) A bill, report, chart, or record of a hospital, doctor, dentist, registered nurse, licensed practical nurse, physical therapist, psychologist or other health care provider, on a letterhead or billhead;
(2) A bill for drugs, medical appliances or other related expenses on a letterhead or billhead;
(3) A bill for, or an estimate of, property damage on a letterhead or billhead. In the case of an estimate, the party intending to offer the estimate shall forward a copy to the adverse party with a statement indicating whether or not the property was repaired, and if it was, whether the estimated repairs were made in full or in part and attach a copy of the receipted bill showing the items of repair and amounts paid;
(4) A police, weather, or traffic signal report, or standard United States government table;
(5) A photograph, x-ray, drawing, map, blueprint or similar documentary evidence, to the extent it is admissible under the other rules of evidence, but without the need for formal proof of authentication or identification;
(6) A document not specifically covered by any of the foregoing provisions but relating to a material fact and having equivalent circumstantial guaranties of trustworthiness, the admission of which would serve the interests of justice.
(b) Notice. Any party intending to offer a document under this rule must serve on all parties a notice, accompanied by a copy of the document and the name, address and telephone number of its author or maker, at least 30 days prior to trial. The notice shall be filed with the court. Copies of documents that accompany the notice shall not be filed with the court.
(c) Opposing Party May Require Proof of Identification and Authentication. Any other party may, within 14 days of notice, serve a written objection to any document proposed to be offered under this rule. In the event of objection, the document shall be admitted into evidence only in accordance with the other rules of evidence. If the court finds that such objection was made without a reasonable basis, then the court may award expenses in accordance with CR 37(c).
(d) No Effect Regarding Weight of Evidence Submitted. This rule does not restrict argument or proof relating to the weight to be accorded the evidence submitted, nor does it restrict the trier of fact's authority to determine the weight of the evidence after hearing all of the evidence and the arguments of opposing parties.
ER 904.
[3] The 14-day window for objections under ER 904(c) need not create a hardship for counsel. Under compelling circumstances, an expansion of time could be requested. See, e.g., CR 6(b).
[4] It is not an abuse of a trial court's discretion, for example, to exclude from evidence a medical record containing expressions of a doctor's opinion which has been offered as a business records exception to hearsay. See Young v. Liddington, 50 Wash.2d 78, 309 P.2d 761 (1957) (admission of hospital records containing examining doctor's conclusion as to causation of present epileptic condition constituted reversible error); Erickson v. Robert F. Kerr, M.D., P.S., Inc., 69 Wash. App. 891, 904, 851 P.2d 703 (1993) (a trial court does not abuse its discretion in excluding portions of medical records containing expressions of opinion, conjecture, or speculation), reversed in part on other grounds, 125 Wash.2d 183, 883 P.2d 313 (1994).
[5] We note that the proposed amendment to ER 904 narrows the list of documents subject to automatic admission under ER 904(a)(1). As the committee's comments indicate, similar medical opinion letters would not be subject to the revised version of ER 904(a).
[6] Here, the Hogge court is explaining the Usner doctrine. See also Mitola v. Johns Hopkins Univ. Applied Physics Lab., 839 F.Supp. 351, 358-59 (D.Md.1993), discussing Usner and noting "Usner does not go so far as to say that the negligence of a crew member will never render a vessel unseaworthy." Mitola, 839 F.Supp. at 358. The Mitola court cites the above quoted language from Hogge, and holds "a plaintiff will be able to avoid summary judgment by producing evidence indicating that the crew member who caused or contributed to the accident was unfit or incompetent, such that a `condition' existed rendering the vessel unseaworthy." Id. at 358-59. Cf. Cella v. United States, 825 F.Supp. 1383, 1400 (N.D.Ind.1991), aff'd, 998 F.2d 418 (7th Cir.1993) (applying Usner and holding a single negligent act of a competent engineering officer causing seaman's injuries did not create an unseaworthy condition, noting the Usner doctrine applies where there is no evidence of a continuous course of conduct creating an unseaworthy condition).
[7] In Snow v. Whitney Fidalgo Seafoods, Inc., 38 Wash.App. 220, 686 P.2d 1090, review denied, 103 Wash.2d 1007 (1984), the Washington Court of Appeals held:

Under general maritime law, a shipowner has an absolute duty to provide a vessel that is seaworthy. This warranty of seaworthiness is a species of liability without fault. The shipowner warrants that the vessel, together with its gear and personnel, are reasonably fit to complete the intended voyage.... A seaman's conduct is not measured by the same standard as the conduct of ordinary men ashore. Instead, a seaman must be "equal in disposition and seamanship to the ordinary men in the calling."
Snow, 38 Wash.App. at 223, 686 P.2d 1090 (citations omitted).
[8] Miller further asks us to revisit numerous issues he presented to the Court of Appeals below, but fails to even list the remaining issues in his Answer to the Petition for Review. We decline his invitation. RAP 13.7(b).