2 P.3d 1006 (2000)
101 Wash.App. 258
Bryce HENDRICKSON, Richard and Wendy Hendrickson, husband and wife, Respondents,
v.
KING COUNTY, Appellant,
Auburn School District No. 408, Defendant.
No. 23938-8-II.
Court of Appeals of Washington, Division 2.
June 23, 2000.
*1007 Richard C. Robinson, Lee, Smart, Cook, Martin & Patterson, Seattle, for Appellant.
Charles Kenneth Wiggins, Kenneth Wendell Masters, Wiggins Law Ofc., Bainbridge Is., Vernon W. Harkins, Rush, Hannula, Harkins & Kyler, Tacoma, for Respondents.
SEINFELD, J.
King County appeals a judgment against it in favor of Bryce Hendrickson and his parents.[1] Hendrickson sustained a spinal cord injury after he dove into a County-owned swimming pool. The County claims the trial court improperly applied CR 32(a)(5) to exclude deposition testimony and ER 904 to exclude medical records. The County also claims it is entitled to a new trial because of instructional error, insufficient evidence of causation, and cumulative error that denied it a fair trial. Finding no reversible error, we affirm.

FACTS
In January 1995, Hendrickson, then 16 years old, was a member of the Auburn High School swim team. The Auburn School District used a King County swimming pool for swim team practices. Although County-employed lifeguards were responsible generally for swimmer safety at the pool, the School District's coaches were in charge during team practice.
The practice pool had a moveable bulkhead that divided the pool into separate sections. During practices, the team placed the divider toward the deep end to separate the diving area from the swimming area. Swim team members routinely dove off the bulkhead *1008 during practices. Neither head swim team coach James Farrell nor assistant coaches Scott McLaughlin and Dave Halford ever advised team members not to dive off the bulkhead or told them about the risk of spinal cord injuries from diving into shallow water.
On January 23, Hendrickson arrived at the pool for practice and helped team members move the bulkhead into position. The pool depth markings at the bulkhead location indicated a water depth of six feet on one side of the bulkhead and five feet on the other side. The actual depths, however, were 5 feet 2 inches and 4 feet 9¾ inches respectively.
When the bulkhead was in place, Hendrickson walked out onto it, placed his feet on the edge, and dove into the water. Although no one saw him enter the pool, Aaron Ennis, a County lifeguard, saw someone dive in headfirst out of the corner of his eye.
Immediately after the dive, Hendrickson was unable to move. A teammate, Tyler Galloway, saw Hendrickson at the bottom of the pool and was able to help him lift his head out of the water. When Hendrickson told Tyler he was unable to breathe, Tyler called for help. County lifeguards and pool manager Tracy Alexander responded. They strapped Hendrickson to a backboard and lifted him from the pool; Hendrickson could not move any part of his body.
While Hendrickson was lying strapped to the backboard, Coach Farrell arrived and asked what happened. According to Coaches Farrell and McLaughlin and pool manager Alexander, Hendrickson said he had done a shallow dive, then a flip turn. In his trial testimony, Hendrickson recalled his comment as follows:
A: Well, I said, "I don't know what happened, I must have been flipping or something." I was just looking for some answers, I had no idea what was going on.
Q: Why did you say to Coach Farrell, "I don't know what's happening, but I must have been flipping or something"?
A: Well, for some reason, it felt like my body was all curled up in like a ball. I kept asking Nathan to straighten my legs out, and he kept saying, "They are straight, man, they are not bent at all."
Q: But you had a sensation like you were curled up?
A: Yes.
Q: Hendrickson, do you have any recollection of doing a flip or some kind of a flip when you dove into the water?
A: No, I don't.
Q: No recollection of that?
A: No.
Q: But do you acknowledge that you made the statement to Coach Farrell?
A: Yeah. I was just  I was looking for some answers. I had no idea what was going on.
Report of Proceedings at 1235. Later, Hendrickson could not remember what occurred after he left the bulkhead.
When Hendrickson's mother, Wendy Hendrickson, arrived at the pool, Coach Farrell told her that her son had been injured practicing flip turns. But Hendrickson told his mother only that he had been injured by diving off the bulkhead.
Hendrickson was sent to Auburn General Hospital. An x-ray of his back indicated a fractured fifth cervical vertebra. From the position of an abrasion at Hendrickson's hairline, Dr. Stephen Olmstead, a treating physician, concluded that the injury resulted from a dive at a steep angle.
Doctors performed a surgical fusion of Hendrickson's spine, surgery that saved his life and enabled him to breathe on his own. However, according to one of Hendrickson's doctors, he will never regain use of his legs, will always need assistance with many daily tasks, and will be at risk for numerous complications.
On April 30, 1997, the Hendricksons filed this lawsuit against the County and the School District, alleging that both entities were negligent. On October 23, the Hendricksons filed a Disclosure of Possible Lay and Expert Witnesses, listing Dr. Fontaine Piper, a Missouri resident, as an expert witness. On December 5, they filed an amendment to this document, again listing Dr. Piper. In both cases, they "reserve[d] the *1009 option to call" Dr. Piper as a witness at trial.
The School District retained as expert witnesses Dr. Leon Kazarian, an Ohio resident, and John Leonard, a Florida resident and expert in the field of coaches' training and certification. The County deposed Leonard and Drs. Piper and Kazarian. Before trial, the School District settled with the Hendricksons. The Hendricksons then retained Dr. Kazarian as their own expert witness.
On August 6, 1998, the Hendricksons filed an ER 904 designation, which listed Hendrickson's medical records from Auburn General Hospital[2] and others from Dr. Judith Ing-Higashi.[3] These documents included pages in which each doctor mentioned that Hendrickson did a flip turn. On August 10, the Hendricksons filed a Plaintiffs' Witness and Exhibit List, identifying witnesses they expected to call at trial. The list did not include either Dr. Piper or Dr. Kazarian.
On August 19, the Hendricksons and the County submitted a Joint Statement of Evidence; it included the documents listed in the ER 904 designation, along with a statement that the "[d]efendant reserves admissibility decision pending foundation and relevance determinations at trial." The Joint Statement did not list either Dr. Piper or Dr. Kazarian as witnesses whom the parties anticipated calling for trial.
Also on August 19, the County filed a general objection to the admission of the documents listed in the Hendricksons' ER 904 designation. This objection stated, in pertinent part, as follows:
Therefore, under Miller [v. Arctic Alaska Fisheries Corp., 83 Wash.App. 255, 261, 921 P.2d 585 (1996) ], defendant must reserve its right to make every objection it can anticipate. At this time, defendant can only anticipate how plaintiffs are going to use the documents listed in their ER 904 designation. Regardless of the authenticity, it is not clear if the documents will be relevant and if proper foundation will be laid by plaintiffs.
For those reasons, defendant King County is acting in good faith in order to preserve its rights to object as to the admission of plaintiff's ER 904 designation. Many of the objections may be withdrawn at time of trial depending upon whether plaintiffs' counsel can lay the proper foundation and whether the documents become relevant.
Clerk's Papers at 834.
On August 21, the County served notice pursuant to CR 32(a)(5)(A) that it intended to introduce the depositions of Leonard, Dr. Piper, and Dr. Kazarian at trial. The Hendricksons moved in limine to exclude the testimony of all three, arguing in part that Drs. Piper and Kazarian were retained as consulting, not testifying, experts and that the County had not properly identified Leonard as a testifying expert. The trial court ruled as follows:
That witness[ ] ... John Leonard ... [was] disclosed by King County in its disclosure of possible primary witnesses [and is] not excluded from testifying at trial. King County cannot read deposition testimony from out of state experts pursuant to CR 32(a)(5). This includes experts identified by both plaintiff and defendant.
That King County may not call, allude to, or otherwise refer to in testimony of plaintiffs' consulting experts, Leon Kazarian... and Fontaine Piper, Ph.D. and King County is also precluded from placing in evidence any videotape or other evidence obtained from plaintiffs' consulting experts;
Clerk's Papers at 909-10.
Trial began on September 10, 1998. At the close of the plaintiffs' case, the County *1010 moved to dismiss for failure to prove causation. The trial court denied the motion.
During its case in chief, the County sought to introduce the medical records of Drs. Ing-Higashi, Joseph, and Olmstead, specifically the notations about Hendrickson doing a flip turn. The Hendricksons objected on the ground that the County had failed to provide notice of its intention to enter these documents into evidence. The trial court excluded the records.
At the close of the evidence, the County moved for a directed verdict, again arguing that the Hendricksons had failed to prove causation. The trial court denied the motion.
By special verdict, the jury found that both the School District and the County were negligent, apportioning fault at 30 percent and 70 percent respectively. The jury found that Hendrickson was not negligent. The County then moved for judgment as a matter of law or for a new trial. The trial court denied the motion.

I. EXCLUSION OF DEPOSITION TESTIMONY
The County first argues that the trial court erred in excluding the deposition testimony of Leonard and Drs. Piper and Kazarian, testimony it contends was "offered in compliance with CR 32(a)." We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. Allyn v. Boe, 87 Wash.App. 722, 738, 943 P.2d 364 (1997), review denied, 134 Wash.2d 1020, 958 P.2d 315 (1998).
The use at trial of a witness's deposition is governed by CR 32(a), which provides, in pertinent part:
(5) The deposition of an expert witness may be used as follows:
(A) The discovery deposition of an opposing party's rule 26(b)(5)[[4]] expert witness, who resides outside the state of Washington, may be used if reasonable notice before the trial date is provided to all parties and any party against whom the deposition is intended to be used is given a reasonable opportunity to depose the expert again.
The record supports a finding that the County failed to give the Hendricksons adequate notice under the rule. The County did not file its notice of intent to read the depositions until August 21, 1998, less than three weeks before the September 10 trial date. The Hendricksons immediately filed a responsive motion in limine to exclude the depositions, which motion the trial court heard the following week, on August 28. This left less than two weeks before trial, with the Labor Day holiday further reducing trial preparation time.
As the reasonable notice provision states, "any party against whom the deposition is intended to be used [must be] given a reasonable opportunity to depose the expert again." CR 32(a)(5)(A). Given the nature and complexity of the case and the plaintiffs' right to re-depose the three witnesses from Missouri, Ohio, and Florida, the trial court did not abuse its discretion in concluding that the County's notice was inadequate under CR 32(a)(5). Thus, we find no error in the exclusion of the deposition testimony.

II. EXCLUSION OF MEDICAL RECORDS
The County next argues that the trial court erred in excluding Exhibits 55, 56, and 57, the medical records of Drs. Ing-Higashi, Joseph, and Olmstead. In particular, the County sought to introduce the pages from these reports in which the doctors refer to *1011 Hendrickson doing a "backflip," "flip turns," or "a flip under water" at the time of the incident. On appeal, the County contends that when the Hendricksons designated these documents pursuant to ER 904, they waived all objections to their admission.[5]
We review a trial court's exclusion of evidence for an abuse of discretion. Hizey v. Carpenter, 119 Wash.2d 251, 268, 830 P.2d 646 (1992). Although the trial court did not specifically state its reasons for excluding this evidence, an appellate court may affirm a trial court's ruling on any grounds the record supports. State v. Frodert, 84 Wash.App. 20, 25, 924 P.2d 933 (1996).
ER 904 provides, in pertinent part:
(a) Certain Documents Admissible. In a civil case, any of the following documents proposed as exhibits in accordance with section (b) of this rule shall be deemed admissible unless objection is made under section (c) of this rule:
(1) A bill, report made for the purpose of treatment, chart [or] record of a hospital, doctor ... or other health care provider...;
....
(b) Notice. Any party intending to offer a document under this rule must serve on all parties a notice, no less than 30 days before trial, stating that the documents are being offered under Evidence Rule 904 and shall be deemed authentic and admissible without testimony or further identification, unless objection is served within 14 days of the date of the notice, pursuant to ER 904(c).....
....
(c) Objection to Authenticity or Admissibility. Within 14 days of notice, any other party may serve on all parties a written objection to any document offered under section (b)....
....
(2) If an objection is made to a document on the basis of admissibility, the grounds for the objection shall be specifically set forth, except objection on the grounds of relevancy need not be made until trial.
At trial, the Hendricksons successfully objected to the admission of these exhibits on the ground that the County had not provided notice of its intention to offer them. On appeal, they provide the following four bases to support the trial court's ruling: (1) one party's ER 904 designation does not make the evidence automatically admissible by another party; (2) even assuming that generally ER 904 allows a party to introduce documents designated by another party, this does not apply when the other party has objected to the evidence; here the County objected to every one of the designated exhibits; (3) assuming that the automatic admissibility rule does not apply, the County failed to raise and thus preserve any argument as to why the court should have admitted these hearsay statements; and (4) the evidence was cumulative and, thus, the trial court had discretion to exclude it; if it did so erroneously, the error was harmless.
We disagree with the Hendricksons' first proposition. As the court stated in Miller v. Arctic Alaska Fisheries Corp., 133 Wash.2d 250, 258, 944 P.2d 1005 (1997), the purpose of ER 904 is to expedite the admission of documentary evidence. Its use can create an "expectation of admission." Miller, 133 Wash.2d at 260, 944 P.2d 1005. The County persuasively argues that to require each party to file and serve a separate ER 904 designation regarding the same documents "contravenes the very intent and purpose of the rule" and invites "waste of time and legal expense."
We are cognizant of the risk posed by this interpretation of the rule, that litigants might become wary of using ER 904 for fear that the records they designate may, unbeknownst to them, contain damaging material that they would prefer to exclude. Nonetheless, the language of ER 904 consistently supports the conclusion that the benefits of a designation are available to all parties. The rule refers specifically to individual parties when discussing filing requirements, e.g., ER 904(b): "Notice. Any party ... must serve." *1012 But when referring to the consequences of a party so serving, the rule uses the passive phrase "shall be deemed authentic and admissible."
ER 904 is equally clear that the automatic admissibility provision applies when the opposing party does not properly object to the evidence. Just as ER 904 requires the proponent of evidence to examine it carefully before offering it, the rule requires the opponent to make specific objections to a finding of admissibility. To allow general, blanket objections to all designated documents would defeat the purpose of the rule, which is to expedite the admission of evidence.
The County based its blanket objection to the designated documents on the grounds of relevance and foundation. As ER 904 reserves relevance objections for trial, this objection had no significance at this point. And as ER 904 requires any other objections to be specifically set forth, the foundation objection also did not comply with ER 904. ER 904 (c)(2). "An objection claiming a lack of foundation is a general objection." City of Seattle v. Carnell, 79 Wash. App. 400, 403, 902 P.2d 186 (1995). Thus, under the rule, the Hendricksons could not rely upon the County's general objections to prevent admission of the documents.
We consider the Hendricksons' trial objection to the admission of these documents. The Hendricksons based their objection on the ground that the County failed to give them notice of its intent to offer these documents. But their own designation of the documents created an "expectation of admission" under the rule; they were already on notice that the documents might be offered. Thus, we conclude that the trial court erred in refusing to admit the medical records.
This error was harmless, however, because the flip turn statements contained in the medical records were cumulative. See Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 169-70, 876 P.2d 435 (1994) (even if grounds for exclusion are untenable, exclusion of evidence that is cumulative or has speculative probative value is not reversible error.) Coaches Farrell and McLaughlin and pool manager Alexander all testified about hearing Hendrickson comment, immediately after being recovered from the pool, that he had been doing a flip turn. The notations in Hendrickson's medical records do no more than restate the testimony of these witnesses; they contain no indication that Hendrickson told the doctors that he had performed a flip turn. To the contrary, Hendrickson testified that he did not remember anything after he left the bulkhead. Thus, the trial court's exclusion of similar statements from the medical records was harmless error.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
HOUGHTON, J., and HUNT, A.C.J., concur.
NOTES
[1] After oral argument, the County submitted a letter in which it suggested that because of the disposition of a related matter, this case is now moot. However, as it did not file a formal motion to dismiss and as Hendrickson contends this matter is not moot, we find no basis to dismiss the appeal.
[2] The County claims in its brief that these include the medical records of both Dr. Olmstead and Dr. John Joseph. But although Auburn General Hospital employed Dr. Olmstead, the record indicates that Dr. Joseph was an employee of Valley Medical Center. The Hendricksons' ER 904 designation lists bills from both Dr. Joseph and Valley Medical Center, but does not mention medical records connected with either.
[3] On September 4, the Hendricksons filed a corrected ER 904 designation that again included these documents. Again, it did not list records from either Dr. Joseph or Valley Medical Center.
[4] CR 26(b)(5) provides, in pertinent part:

Discovery of facts known and opinions held by experts ... may be obtained only as follows:
(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and to state such other information about the expert as may be discoverable under these rules. (ii) A party may ... depose each person whom any other party expects to call as an expert witness at trial.
(B) A party may discover facts known or opinions held by an expert who is not expected to be called as a witness at trial, only ... upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.
[5] As noted above, it appears that the Hendricksons' ER 904 designation did not refer to Dr. Joseph's records, Exhibit 56. Thus, our ER 904 discussion does not apply to Exhibit 56.