905 P.2d 77

**STATE of Hawaiʻi, Plaintiff–Appellee,**

v.

**Homer KEMPER, Defendant–Appellant.**

**No. 16477.**

Intermediate Court of Appeals of Hawaiʻi.

Oct. 23, 1995.

Linda C.R. Jameson, Deputy Public Defender, on the brief, Honolulu, for defendant-appellant.

Kathleen M. Sato, Deputy Prosecuting Atty., City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

*PER CURIAM.*

The State of Hawaiʻi (State) charged Defendant–Appellant Homer Kemper (Defendant) with the offense of Driving Under the

Influence of Intoxicating Liquor (DUI) in violation of Hawai'i Revised Statutes (HRS) § 291–4(a)(1) and (2) (Supp.1992).[1] In a bench trial, the district court had a reasonable doubt of Defendant's guilt under HRS § 291–4(a)(1), but found him guilty under HRS § 291–4(a)(2), based on the breath test result showing a 0.113 percent blood alcohol concentration (BAC) obtained from an intoxilyzer model 4011AS breath testing instrument (Intoxilyzer).[2]

On appeal, Defendant's sole contention is that the district court reversibly erred in admitting the Intoxilyzer breath test result into evidence. We disagree and affirm the conviction.

## FACTS

Late at night on May 8, 1992, Honolulu Police Department (HPD) officer Dan Kwon (Officer Kwon) observed a speeding vehicle on Nimitz Highway skid into the intersection at Kalihi Street against a red traffic light. Officer Kwon stopped the vehicle not too far from the intersection. Defendant, the driver, exited the vehicle as Officer Kwon approached. The officer observed that Defendant "had a hard time balancing, and staggering somewhat[,]" "had a strong alcoholic odor on his breath[,]" and "[h]is eyes were bloodshot, and almost sleepy looking[.]" Noticing that Defendant was chewing tobacco, Officer Kwon had Defendant remove the tobacco from his mouth.

HPD officer Joseph Barros (Officer Barros), who had been called to the scene, observed that Defendant "had very bloodshot watery eyes, and a strong odor of alcohol on his breath." Upon administering a field so-briety test, Officer Barros deemed Defendant to have failed the test. Thereupon, the officer arrested Defendant for DUI at 12:50 a.m.

After the arrest, Officer Kwon transported Defendant to the Kalihi Police Station. During the transport, the officer observed the handcuffed Defendant "to make sure he's not eating, smoking, or drinking or regurgitating."

At the bench trial held on August 18, 1992, HPD sergeant Frank Pugliese (Sergeant Pugliese), a certified Intoxilyzer operator, testified that (1) he sequentially followed the seventeen-step HPD Intoxilyzer Operational Checklist (Checklist) in administering the breath test on Intoxilyzer No. 102370; (2) he observed Defendant for a period of fifteen minutes prior to Defendant's taking the breath test to ensure that Defendant did not eat, drink, smoke, or regurgitate anything; (3) the calibration for accuracy of Intoxilyzer No. 102370 was done with a beam attenuator bearing an identical serial number; and (4) Intoxilyzer No. 102370 was working properly, printing out the results in the proper order on the printout test card.

The court qualified HPD criminalist Claire Chun (Chun) as an expert in the use of the Intoxilyzer. Chun testified that, on May 4, 1992, and June 1, 1992, she checked Intoxilyzer No. 102370 for accuracy with both simulator solutions and with the beam attenuator. She stated that, if an Intoxilyzer operator followed the Checklist sequentially, the operator would obtain the BAC of the person being tested. After examining the Checklist which Sergeant Pugliese had used and the completed Intoxilyzer test card obtained by the sergeant, Chun testified that, in her opin-

---

1. Hawai'i Revised Statutes (HRS) § 291–4(a)(1) and (2) (Supp.1992) reads as follows:

    **291–4 Driving under the influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:
    (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or
    (2) The person operates or assumes actual physical control of the operation of any vehi-

cle with .10 per cent or more, by weight of alcohol in the person's blood.
    HRS § 291–4(a)(1) and (2) "sets forth one offense with alternate methods of proof[,]" *State v. Grindles,* 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989).

2. Defendant was also charged and convicted for Disregarding a Traffic–Control Signal Legend in violation of HRS § 291C–32 (1985). Although the notice of appeal includes this conviction, Defendant's brief does not cover this conviction. We therefore deem the appeal regarding this conviction to be abandoned and affirm that conviction.

ion, "the test was performed properly and that the results are accurate." Chun stated that Defendant's breath test result showed a BAC of 0.113 percent.

Defendant testified that it was Officer Barros, rather than Officer Kwon, who told him to spit out the chewing tobacco. Defendant stated that he was unable to spit out the tobacco and the tobacco remained in his throat until his release. On cross-examination, Defendant admitted that he had consumed a glass of wine and about three-and-a-half beers during the evening of his arrest for DUI.

Due to reasonable doubt, the district court acquitted Defendant under HRS § 291–4(a)(1). However, the court convicted Defendant under HRS § 291–4(a)(2), stating:

> There was nothing in the testimony to indicate that the reading [showing a BAC of 0.113 percent] might not be a true reading.
>
> There was some testimony on your [Defendant's] part that maybe the reading might have been affected by the fact that you were chewing tobacco, and there was some tobacco lodged in your throat. You couldn't get rid of it. And that therefore it might have affected your reading.
>
> I'm not certain as to whether or not that adds any bearing on the reading itself, because the reading is based upon alcohol, and as far as I know, tobacco doesn't affect the reading at all[.]
>
> Based upon that, the Court has no choice but to find you guilty as charged[.]

## DISCUSSION

■ A fundamental evidentiary rule is that "before the result of a test made out of court may be introduced into evidence, a foundation must be laid showing that the test result can be relied on as a substantive fact." *State v. Souza*, 6 Haw.App. 554, 558, 732 P.2d 253, 256 (1987). Regarding an Intoxilyzer breath test result, "the foundation must show that '(1) the [I]ntoxilyzer was in proper working order; (2) its operator was qualified; and (3) the test was properly administered.'" *State v. Thompson*, 72 Haw. 262, 263, 814

P.2d 393, 394–95 (1991) (quoting *State v. Souza*, 6 Haw.App. at 558, 732 P.2d at 257).

■ The State Department of Health has adopted rules and regulations with respect to the "Testing of Blood, Breath and Other Bodily Substances for Alcohol Concentration" (Rules) to assure "proper 'scientific and technical' procedures in the testing for blood alcohol concentration[.]" *Souza*, 6 Haw.App. at 560, 732 P.2d at 258. Therefore, we have held that "in meeting the foundational prerequisites for the admission of the Intoxilyzer test result there must be a showing of strict compliance with those provisions of the Rules which have a direct bearing on the validity and accuracy of the test result." *State v. Matsuda*, 9 Haw.App. 291, 293, 836 P.2d 506, 508 (1992) (citation and internal quotation marks omitted).

■ Defendant asserts that the district court committed plain error in admitting the Intoxilyzer test result into evidence where there was a lack of strict compliance with § 11–111–2.1(b) of the Rules, which reads as follows:

> (b) The subject shall be continuously observed for not less than fifteen minutes prior to collection of the breath sample, during which period the subject shall not have ingested alcohol beverages, vomited, eaten, or smoked.

Defendant argues that, since tobacco was lodged in Defendant's throat while performing the Intoxilyzer breath test, strict compliance with the quoted section of the Rules was lacking and, therefore, the district court erred in admitting the Intoxilyzer test result into evidence.

Our review of the record indicates that the foundational evidence relating to the use of Intoxilyzer No. 102370 by Sergeant Pugliese in testing Defendant's breath was adequate to show that (1) Intoxilyzer No. 102370 was in proper working order; (2) Sergeant Pugliese was a qualified operator; and (3) he administered the test properly. Additionally, the record shows that there was strict compliance with the provisions of § 11–111–2.1 of the Rules which have a direct bearing on the validity and accuracy of the Intoxilyzer test result. Chun's testimony substantiated strict

compliance with § 11–111–2.1(j) and –2.1(k) relating to the testing for accuracy of Intoxilyzer No. 102370 within the proper time prior to and after the breath-testing of Defendant. Sergeant Pugliese strictly complied with the provisions of § 11–111–2.1($l$) relating to accuracy verification test during the actual breath testing of Defendant. Sergeant Pugliese strictly complied with § 11–111–2.1(b) by continuously observing Defendant for fifteen minutes prior to Defendant's breath-testing. The evidence clearly shows that during such time Defendant did not eat, drink, regurgitate, or smoke anything. Also, Defendant testified that he did not tell Sergeant Pugliese that there was tobacco in his throat or mouth. Section 11–111–2.1(b) did not require Sergeant Pugliese to check Defendant's mouth or throat.

█ Under the foregoing circumstances, the foundational evidence was sufficient to admit the Intoxilyzer test result into evidence. Defendant's testimony that tobacco was lodged in his throat or mouth, if credible, merely went to the weight which the court should have accorded the Intoxilyzer test result in evaluating its accuracy, not to the admissibility of the test result. *See State v. Gates,* 7 Haw.App. 440, 777 P.2d 717 (1989) (holding that testimony regarding the partition ratio of the Intoxilyzer goes to the weight which the jury may give to the Intoxilyzer test result concerning its accuracy, not to the admissibility of the test result).

## CONCLUSION

Since the State laid an adequate evidentiary foundation as set forth above, the district court did not err in admitting the Intoxilyzer test result into evidence.

Affirmed.