**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000073
05-JAN-2024
07:53 AM
Dkt. 50 SO**

NO. CAAP-23-0000073

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF P.L.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 22-00150)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Wadsworth and McCullen, JJ.)

Appellant Father (**Father**) appeals from the Orders Concerning Child Protective Act (**Orders**), entered on February 9, 2023, in the Family Court of the First Circuit (**Family Court**).[1] The Family Court ordered, among other things, continued foster custody of Father's child, P.L. (**Child**).

Child was born in August 2021. On October 5, 2022, Father was arrested for attempted murder for allegedly stabbing Child's mother (**Mother**) while she held Child in her arms. A police officer took protective custody of Child pursuant to Hawaii Revised Statutes (**HRS**) § 587A-8 (2018), and custody was transferred to Petitioner-Appellee Department of Human Services (**DHS**). DHS assumed temporary foster custody pursuant to HRS §§ 587A-8 and 587A-9 (2018) and confirmed the threat of abuse and neglect by Mother and Father.

On October 10, 2022, DHS filed a Petition for Temporary Foster Custody of Child (**Petition**), alleging that Child's physical or psychological health or welfare was subject to imminent harm or threatened imminent harm by the acts or omissions of Child's family, including: (1) Father's arrest for

---

[1] The Honorable Brian A. Costa presided.

allegedly stabbing Mother while she held Child; (2) Child being left with no legal caregiver or custodian willing and able to provide her with a safe family home; and (3) Mother and Father's history of drug use and Father's history of domestic violence. On October 12, 2022, at the initial court hearing on the Petition, Father was provided court-appointed legal counsel, and the Family Court confirmed temporary foster custody.

On January 30, 2023, Father's adjudication trial was held. All parties and their respective counsel were present. The court heard testimony from Raquel Taguchi (**Taguchi**), the assigned DHS social worker supervisor. All parties stipulated to Taguchi's expertise as a social worker in the area of child protective and child welfare services. Taguchi testified, among other things, that in February 2022, the safety concerns for Child were domestic violence and substance abuse, and following the October 5, 2022 incident, the DHS crisis response team and Mother reported to her that Father had stabbed Mother while holding Child. Taguchi further testified that Father was unable to provide Child with a safe and stable environment as he remained incarcerated and had a substance abuse history. The Family Court found Taguchi's testimony to be credible.

The Family Court entered the Orders on February 9, 2023, and related Findings of Fact and Conclusions of Law (**FOFs/COLs**) on March 15, 2023. The court found by a preponderance of the evidence that

> based upon the credible testimony and the report(s) submitted pursuant to HRS §§ 587A-7 (2018) and 587A-18 (2018) and the record herein, . . . there is an adequate basis to sustain the Petition in that the Child is a child whose physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts or omissions of the Child's family.

The court also concluded that "Father is currently not willing and able to provide the Child with a safe family home, even with the assistance of a service plan and, as such, foster custody of the Child is appropriate." As relevant here, the court took jurisdiction over Father, adjudicated the Petition, and continued foster custody of Child.

On appeal, Father appears to contend that the Family Court erred in concluding that Father caused harm or threatened

2

harm to Child, because: (1) Taguchi's testimony about the stabbing incident was inadmissible hearsay; and (2) "the record contains no admissible evidence that [Father] harmed or threatened to harm his child by an act or omission." Relatedly, Father appears to challenge FOFs 22, 29, 30, 34, 37, and 38, and COL 8.[2/]

---

[2/]    The challenged FOFs and COL state:

### FINDINGS OF FACT

. . . .

22.    On October 5, 2022, the Child was left with no legal caretaker and the Child not only witnessed domestic violence between Mother and Father, but was also in a highly dangerous situation in which Father stabbed Mother while she was holding the Child in her arms.

. . . .

29.    On October 5, 2022, the DHS received another report of physical neglect, threat of abuse and threat of neglect, that Father had stabbed Mother during an argument while Mother was holding the Child in her arms.

a.    Father was arrested for attempted murder by the Honolulu Police Department and Mother was taken to the hospital with stab wounds.

b.    A police officer took protective custody of the Child, who was 22-months old at the time. Custody was transferred to the DHS and the DHS assumed temporary foster custody.

30.    Due to the stab wounds inflicted by Father, Mother was admitted to the Intensive Care Unit at The Queen's Medical Center and she was eventually released just prior to November 2022.

. . . .

34.    Based upon the second report to DHS, Father not only engaged in domestic violence with the Child present, but Father also placed the Child is [sic] a highly dangerous situation when he stabbed Mother while she was holding the Child.

. . . .

37.    Father has a history of substance abuse which poses a high risk of harm to the Child.

### Assessments

38.    The Child's physical or psychological health or welfare has been harmed and is subject to threatened harm by the acts or omissions of the Child's family.

. . . .

(continued...)

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's contentions as follows:

(1) Father contends that "[DHS] did not provide admissible evidence of harm or threatened harm by the parents because the basis of [Taguchi's] opinion that there was harm or threatened harm is hearsay evidence that is not acceptable to prove factually that [Father] stabbed [M]other while she was hold[ing] the baby on October 5, 2022."

At trial, Father stipulated to Taguchi's expertise in the area of child protective and child welfare services. Father did not object to or move to strike Taguchi's testimony concerning the stabbing incident as inadmissible hearsay at any time before the close of evidence.[3] Father merely stated in closing argument that "there is no admissible evidence presented today to establish that [F]ather stabbed [M]other." This was insufficient to preserve Father's current hearsay argument. Under HRE Rule 103(a)(1), an "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is

---

[2] (...continued)

**CONCLUSIONS OF LAW**

. . . .

8. The Child's physical or psychological health or welfare has been harmed and is subject to threatened harm by the acts or omissions of the Child's family.

[3] Father also did not raise a timely hearsay objection to the October 7, 2022 Safe Family Home Report **(10/7/22 SFHR)**, which was admitted into evidence as Exhibit 1. The 10/7/22 SFHR stated, in relevant part:

On 10/05/22, [Father] was arrested for attempted murder . . . as it was reported, [Father] stabbed [Mother]. [Mother] was holding [Child] at the time of the incident. . . .

It was reported, [Mother] and [Father] got into an argument a few days prior to the stabbing and [Father] kicked [Mother] out of the home. [Mother] came to the home on 10/05/22 to pick up [Child]. At that time, [Mother] and [Father] got into an argument and [Father] stabbed [Mother]. [Mother] was holding [Child] in her arms when [Father] stabbed [Mother].

4

one admitting evidence, <u>a timely objection or motion to strike</u> <u>appears of record</u>, stating the specific ground of objection, if the specific ground was not apparent from the context[.]" (Emphasis added; format altered.)  The purpose of requiring a specific objection to the introduction of inadmissible testimony is to inform the trial court of the error.  <u>See</u> <u>State v. Long</u>, 98 Hawaiʻi 348, 353, 48 P.3d 595, 600 (2002).  Because Father failed to object to or move to strike the challenged testimony, Father's hearsay argument is deemed waived.  <u>See</u> <u>State v. Engelby</u>, 147 Hawaiʻi 222, 232-33, 465 P.3d 669, 679-80 (2020); <u>State v.</u> <u>Kawakami</u>, No. CAAP-19-0000874, 2021 WL 2268834, at *2 (Haw. App. June 3, 2021) (SDO) (noting that the appellant failed to timely object to or move to strike testimony under HRE Rule 103(a)(1) when he addressed the issue only during closing argument).

Father makes no other discernible argument as to why FOFs 22, 29, 30, and 34 are clearly erroneous.[4]  His challenge to these FOFs is therefore without merit.

(2) Father asserts more generally that "the record contains no admissible evidence that [Father] harmed or threatened to harm his child by an act or omission."  This contention appears to challenge FOF 38 and COL 8, and is also without merit.

In addition to the Family Court's FOFs regarding the stabbing incident, the court made other findings that support FOF 38 and COL 8, which Father does not contest on appeal.  These FOFs include the following:

**FINDINGS OF FACT**

. . . .

25.   The Child is vulnerable due to her young age and being completely dependent on adult caretakers to meet her needs.

. . . .

32.   The Child had no legal caretaker when protective custody was taken by the police officer as Mother was admitted to the hospital and Father was taken into custody by the police.

---

[4]   For example, Father does not cite any evidence in the record that contradicts or undermines any of the challenged FOFs, and we have found none.

. . . .

35. Father's extreme violent behavior poses a high risk of harm to the Child and demonstrates his inability to appropriately parent and to prioritize the Child's needs over his own.

36. Due to Father's incarceration, Father is unable to provide supervision, care, protection, nor a home/shelter for the Child.

. . . .

40. It is contrary to the immediate welfare of the Child to remain in the family home.

41. Father is currently not willing and able to provide the Child with a safe family home, even with the assistance of a service plan.

These uncontested FOFS are binding on this court and further support the Family Court's mixed conclusions of fact and law in FOF 38 and COL 8. See In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002) ("Unchallenged findings are binding on appeal." (quoting Poe v. Haw. Labor Rels. Bd., 97 Hawaiʻi 528, 536, 40 P.3d 930, 938 (2002))). Accordingly, we conclude that FOF 38 and COL 8 are supported by substantial evidence in the record, and we are not left with a definite and firm conviction that a mistake has been made.[5] See In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001).

For the reasons discussed above, we affirm the Orders Concerning Child Protective Act, entered on February 9, 2023, in the Family Court of the First Circuit.

DATED: Honolulu, Hawaiʻi, January 5, 2024.

On the briefs:

Herbert Y. Hamada
for Father-Appellant.

Kellie M. Kersten and
Julio C. Herrera,
Deputy Attorneys General,
for Petitioner-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

---

[5] Father presents no discernible argument as to why FOF 37 is clearly erroneous. In any event, FOF 37 is supported by substantial evidence in the record, including the 10/7/22 SFHR, and we are not left with a definite and firm conviction that a mistake has been made.